UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                          Case No. 14-cr-012-01-JD
                                            Opinion No. 2015 DNH 090
Peter Apicelli


O R D E R


Peter Apicelli is charged with one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1).  Apicelli moves to suppress evidence obtained by the government through surveillance of areas around Apicelli's home, evidence seized during a search of the home, and an identification of Apicelli as the person shown in surveillance videos taken of the area around his home.  The government objects to the motion.


I.  Background

The background information is summarized from the materials submitted by Apicelli in support of his motion to suppress and by the government in support of its objection.  The material facts are not disputed.

Beginning in April of 2012, Apicelli rented a house and property located at 201 Mason Road in Campton, New Hampshire, from Rene and Elizabeth Dubois.  While living there, Apicelli encountered Robert "Butch" Bain and his daughter many times on

the property around the house.  Apicelli told Bain that he did not want him on the property, and Bain responded that he had hunted on the property for twenty years.

When Bain continued to enter the property, Apicelli complained to his landlord, Rene Dubois.  Dubois then prepared a document titled "Mason Property Land Use Conditions August 27, 2013" "[i]n an effort to balance all parties."  In the document, Dubois stated that while Apicelli had "exclusive privacy rights" to the property, certain exceptions were granted to Bain to hunt and access snowmobile trails on parts of the property.

On September 5, 2013, Detective Nicholas Blodgett and Detective Eric Piche, members of the New Hampshire Drug Task Force, met with Sergeant Patrick Payer of the Campton Police Department to investigate a report of marijuana growing in the area of Mason Road in Campton.  Blodgett stated in his report that a "concerned citizen" told him about the "alleged grow." The concerned citizen also said that he had seen a lot of traffic at a residence on Mason Road that was rented by Peter Apicelli, that Apicelli did not want anyone on the property, and that Apicelli seemed nervous about people being there.  Payer noted that the property was owned by Rene Dubois.

The same day, Blodgett, Piche, Payer, and the concerned citizen met in the area of 201 Mason Road to look for the

2

marijuana that the concerned citizen had reported was growing there.  They walked to the back of the property, which was an apple orchard, and in the woods next to the orchard they saw what appeared to be marijuana growing in two different areas. The area where the marijuana was growing was about 200 yards away from Apicelli's house.  They then left the property.

Blodgett, Piche, and Payer decided to install a surveillance camera on the marijuana plants.  Blodgett contacted Sergeant Eric James of the Grafton County Sheriff's Department who said that a surveillance camera was available for them to use.

On the morning of September 6, Blodgett, Payer, and James drove to 201 Mason Road to install the camera for surveillance. They walked through the property to get to the area where Blodgett and Payer had found marijuana growing the day before and on the way found another group of marijuana plants.  James noted that the plants were in clumps together on the edge of woods next to a field or an orchard.  James also noted that the plants had been tended by being planted in potting soil and propped up with rocks.  Blodgett and James set up the surveillance camera to watch the area where they first found marijuana growing.

The group returned on September 9 to check the camera's recordings.  The plants appeared to be untouched.  They found that no person was shown on any of the recordings and thought that the wind had set off the camera.  They decided to check the camera again a few days later and left.  They went back to the area on September 12 to check for activity and found that the plants had been knocked down in a recent thunderstorm.  Again, there was no one shown on the recordings.

On September 16, Blodgett, Payer, James, and Detective Hollie Dube of the New Hampshire Drug Task Force, walked into the area again to check the camera.  The plants showed signs of having been tended because they were now staked and some had been clipped or pruned.  This time two recordings showed a male subject wearing a green shirt and tan shorts and carrying a red back pack.  The person was seen tending the plants on two different days.  James took the hard drive from the camera and they left.  James made copies of the recordings and gave them to Payer.  Payer identified Apicelli as the person shown in the surveillance recordings based on several sources of information.

Payer applied for a warrant to search Apicelli's house on September 17.  In the supporting affidavit, Payer described the investigation of Apicelli's property, how and where the marijuana was found, the number and size of the plants, the

4

evidence that the plants were being intentionally cultivated, and the results of camera surveillance.  Payer also stated that he had determined that the property was owned by Rene and Elizabeth Dubois and was being rented by Apicelli and that a green Ford Ranger at the house was owned by Apicelli.  Payer further stated:  "Apicelli through police department, motor vehicle, and criminal records fits the description of the subject that was seen in the video."

Payer also explained that the residence at 201 Mason Road "is in an area that is hunted regularly by [blank] is friends with the Dubois, and also the [blank]."  He stated that "[blank] identified the male subject on the video as being Peter Apicelli.  [Blank] said that [blank] has known Apicelli for roughly two years.  [Blank] was able to identify Apicelli based on his attire, mannerisms, and physical descriptors.  [Blank] said that [blank] has had roughly a dozen personal interactions with Apicelli in the past two years."[1]  Payer then provided his opinions, based on his training and experience, about the

---

[1] The government refers to the person indicated by the blank areas in the affidavit as a "concerned citizen" while Apicelli identifies the person as Bain.  The government does not dispute Apicelli's identification of the concerned citizen as Bain. Therefore, for purposes of the motion to suppress only, the concerned citizen will be presumed to be Bain.

likelihood that other evidence related to manufacturing marijuana for sale would be found in the house.

The warrant application was granted the same day, September 17.  Once the search warrant was obtained, Payer, James, Blodgett, Dube, Officer Lee of the Campton Police Department, and State Police Trooper Shawn Torsey drove to Apicelli's home at 201 Mason Road.  They found that no one was home and entered the house to conduct the search.  In the course of the search, the officers found marijuana drying in the stairwell of the house and marijuana growing in the basement.  They also found growing equipment and evidence of marijuana harvesting and use. The red back pack seen in the surveillance footage was found in the kitchen.  The officers seized all of the evidence of marijuana possession, cultivation, manufacturing, and sales, which included 130 marijuana plants.


II.  Hearing

Apicelli did not request a hearing on his motion to suppress.  He also did not make any developed argument to show that he would be entitled to a hearing.  Further, the record does not support a need for a hearing.

"A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress."  United States v.

Cintron, 724 F.3d 32, 36 (1st Cir. 2013).  To be granted a hearing, "the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief."  Id. (internal quotation marks omitted). When a defendant challenges an affidavit used by the police to obtain a search warrant, he is entitled to an evidentiary hearing only if he first makes "two 'substantial preliminary showings': (1) that a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth' and (2) the falsehood or omission was necessary to the finding of probable cause."  United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012) (citing and quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).

Apicelli challenges the affidavit submitted by Sergeant Payer in support of the search warrant application as being "incomplete, inaccurate, and deceptive."  His complaints focus on the failure to identify Bain as the concerned citizen who provided the tip about the marijuana growing on Apicelli's property and failure to provide details about Bain that Apicelli believes would undermine his credibility.  As is explained in more detail in addressing the motion to suppress, however, the affidavit included more than sufficient information to support probable cause for the search.  Therefore, the motion to

7

suppress is decided without a hearing, based on the exhibits submitted by Apicelli and the government.

III.  Motion to Suppress

In support of his motion to suppress, Apicelli argues that the government illegally obtained a search warrant for his home based on information obtained in violation of the Fourth Amendment.  As a result, he argues, the evidence taken in the search of his home must be suppressed as fruit of the poisonous tree.  In addition, he contends that Bain's identification of him as the person shown in the surveillance footage was unreliable.  For those reasons, he moves to suppress all evidence obtained through the search and to suppress Bain's identification.  The government objects to the motion to suppress.

The Fourth Amendment protects "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'" United States v. Molina-Gomez, 781 F.3d 13, 18 (1st Cir. 2015).  That protection requires the police to obtain a warrant to search a suspect's home, absent certain limited exceptions. United States v. Lyons, 740 F.3d 702, 724 (1st Cir. 2014).  The Fourth Amendment also provides that "'no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and
particularly describing the place to be searched, and the
persons or things to be seized.'" Id.  In addition, "[e]vidence
obtained during a search may be tainted by the illegality of an
earlier Fourth Amendment violation, so as to render such
evidence inadmissible as 'fruit of the poisonous tree.'" United
States v. Camacho, 661 F.3d 718, 728 (1st Cir. 2011) (quoting
Wong Sun v. United States, 371 U.S. 471, 488 (1963)); United
States v. D'Andrea, 648 F.3d 1, 6 (1st Cir. 2011).

A.  Information from Investigation

Apicelli contends that the tip from Bain about marijuana
growing on Apicelli's property was based on Bain's illegal
search of his property.  He also contends that surveillance
footage of marijuana growing on his property was obtained
illegally from a camera planted by the police without a warrant.
He further contends that the search warrant was granted based on
"a selective and deceptive affidavit" that lacked material
information.

1.  Bain's Status

Apicelli asserts that Bain was acting as a police agent
when he entered Apicelli's property and gave the police

information about marijuana that he saw growing there.  As a
result, he argues, Bain's actions violated the Fourth Amendment.

"A private search only implicates the Fourth Amendment if
the private party acts as a 'government agent.'"  United States
v. Cameron, 699 F.3d 621, 637 (1st Cir. 2012).  That
determination requires an evaluation of three factors:  "(1)
'the extent of the government's role in instigating or
participating in the search': (2) '[the government's] intent and
degree of control it exercises over the search and the private
party'; and (3) 'the extent to which the private party aims
primarily to help the government or to serve its own
interests.'"  Id. (quoting United States v. Silva, 554 F.3d 13,
18 (1st Cir. 2009)).

It is undisputed that Bain was not an employee of the
Campton Police Department.  Despite his conclusory statements
about Bain's status, Apicelli provides no evidence or developed
argument that Bain was acting as a police agent when he entered
the property and then reported seeing marijuana growing there.
Specifically, Apicelli provides no evidence to show that the
Campton police instigated Bain's search of Apicelli's property,
that the Campton police controlled the search or Bain's
activities, or that Bain entered the property to help the police
rather than to serve his own interests.  To the contrary,

10

Apicelli asserts that he had an unfriendly relationship with Bain because Bain had entered Apicelli's property without permission on many occasions before the marijuana issue arose. Apicelli also establishes that Bain entered the property to hunt as he had done for years.

Even if Apicelli could show that Bain had been acting as an agent of the Campton police, he cannot establish that Bain's activities violated Apicelli's Fourth Amendment rights.

### 2.  Investigation

Apicelli argues that Bain's tip and the police investigation in response, including the surveillance camera, were illegal searches in violation of the Fourth Amendment.  He contends that because the information from Bain and the investigation was illegally obtained and provided the basis for the warrant to search his home, the evidence obtained in the search of his home must be suppressed.  The government contends that Apicelli's Fourth Amendment rights were not violated by any of the challenged actions.

"A search within the meaning of the Fourth Amendment 'occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable.'" D'Andrea, 648 F.3d at 5-6 (quoting Kyllo v. United States, 533 U.S. 27, 33

(2001)).  Not all of an individual's property, however, is
protected by the Fourth Amendment from warrantless searches.
Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013); Oliver v.
United States, 466 U.S. 170, 176, 178 (1984).  While the house
itself, along with the area closely associated with the house,
known as the curtilage, are protected, open fields, including
any unoccupied areas outside of the curtilage, are not.
Jardines, 133 S. Ct. at 1414-15; United States v. Dunn, 480 U.S.
294, 304 (1987); Oliver, 466 U.S. at 180.  Therefore, a search,
even a search conducted through a common law trespass, into
unprotected areas has no significance for purposes of the Fourth
Amendment.  United State v. Jones, 132 S. Ct. 945, 953 (2012);
United States v. Mathias, 721 F.3d 952, 956-57 (8th Cir. 2013);
Halloran v. Duncan, --- F. Supp. 3d ---, 2015 WL 1245551, at *6-
*7 (W.D. Tenn. Mar. 18, 2015); Pina v. Morris, 2013 WL 1283385,
at *6 (D. Mass. Mar. 28, 2013); United States v. Mendoza, 2012
WL 5331216, at *2 (E.D. Wisc. Oct. 9, 2012).

     "The protection afforded the curtilage is essentially a
protection of families and personal privacy in an area
intimately linked to the home, both physically and
psychologically, where privacy expectations are most
heightened."  California v. Ciraolo, 476 U.S. 207, 212-13
(1986); accord Jardines, 133 S. Ct. at 1415.  Whether an area is

part of the home's curtilage "should be resolved with particular
reference to four factors:  the proximity of the area claimed to
be curtilage to the home, whether the area is included within an
enclosure surrounding the home, the nature of the uses to which
the area is put, and the steps taken by the resident to protect
the area from observation by people passing by." Dunn, 480 U.S.
at 301.  In contrast, any area of private property outside the
curtilage is not part of the house and, therefore, is not
protected. Jones, 132 S. Ct. 958-59.

Bain's tip to the police about marijuana growing on
Apicelli's property was based on his observations while he
walked on Apicelli's property.  He had been told not to go on
Apicelli's property, except in the limited areas he could use
for hunting and for a snowmobile trail.  Similarly, the police
did not have permission or a warrant to enter Apicelli's
property when they observed the marijuana growing and installed
the surveillance camera.  Apicelli asserts that because Bain and
the police were trespassing when they entered his property,
their activities violated the Fourth Amendment.

Trespass alone, however, does not violate the Fourth
Amendment.  None of the activities by Bain and the police took
place in the curtilage of Apicelli's home.  Instead, the
marijuana was found in a wooded area next to an apple orchard,

13

200 yards east of the house.  Apicelli does not suggest that the area where the marijuana was growing was fenced, or close to the house, or part of his private yard, or in any way protected from observation.  Therefore, the intrusions onto his property did not implicate the Fourth Amendment.  See Oliver, 466 U.S. at 180; see also Dunn, 480 U.S. at 304; Mathias, 721 F.3d at 956.

The government's use of a surveillance camera to record Apicelli's activities also does not implicate the Fourth Amendment.  A hidden surveillance camera on a suspect's property that is not recording activities within the curtilage does not violate the Fourth Amendment.  United States v. Vankesteren, 553 F.3d 286, 290-91 (4th Cir. 2009); Mendoza, 2012 WL 5331216, at *2; see also United States v. Anderson-Bagshaw, 509 F. App'x 396, 403-04 (6th Cir. 2012) (distinguishing surveillance of barnyard and pasture as open fields from backyard as curtilage).

Therefore, the information the police obtained from Bain, from their own observations on Apicelli's property, and from camera surveillance was gathered without a Fourth Amendment violation.  The application for the search warrant properly relied on that information, and the evidence obtained as a result of the search was not fruit of the poisonous tree.

B. <u>Affidavit for Warrant Application</u>

Apicelli challenges the warrant obtained to search his house on the ground that the affidavit submitted by Sergeant Payer in support of the application was "incomplete, inaccurate, and deceptive."  His primary complaint is that the affidavit did not identify the source of the information about the marijuana growing on Apicelli's property as Bain but instead described the source as a "Concerned Citizen" or a "cooperating individual." Apicelli argues that the affidavit omitted the information that Bain was a town employee, Bain had previously worked with the police, Bain had a motive to retaliate against Apicelli, Bain had trespassed on Apicelli's property many times, Bain's identification of Apicelli in the video was overly suggestive or fabricated, Bain was a police agent, and Bain made other patently false statements that were not included in the affidavit.

As discussed above, Apicelli did not request a Franks hearing "to 'challenge the veracity of a sworn statement used by police to procure a search warrant.'"  United States v. Graf, --- F.3d ---, 2015 WL 1788217, at *1 (1st Cir. Apr. 21, 2015) (quoting Franks, 438 U.S. at 155-56).  Evidence obtained pursuant to a search warrant may be suppressed "only if the

warrant application, cleansed of any false information or
clarified by disclosure of previously withheld material, no
longer demonstrates probable cause." United States v. Silva,
742 F.3d 1, 9 (1st Cir. 2014) (internal quotation marks
omitted). "Probable cause to issue a warrant exists when, given
all the circumstances set forth in the affidavit, there is a
fair probability that contraband or evidence of a crime will be
found in a particular place." Id. (internal quotation marks
omitted).

The information from Bain, referred to in the affidavit,
was the tip about a possible marijuana grow in the area of Mason
Road and Bain's identification of Apicelli as the man in the
recordings from the surveillance camera. When the police rely
on a tip from a confidential informant to provide probable cause
for a search warrant, the affidavit in support of the warrant
application must "must recite some of the underlying
circumstances from which the informant concluded that relevant
evidence might be discovered, and some of the underlying
circumstances from which the officer concluded that the
informant was credible or his information reliable." Graf, 2015
WL 1788217, at *5.

In this case, however, the affidavit did not rely on Bain's
tip alone to provide probable cause for the warrant. Instead,

as explained in the affidavit, an investigation was done based on the tip, which confirmed Bain's information and found marijuana growing on Apicelli's property.  Additional details about Bain, which Apicelli argues were improperly omitted from the affidavit, pertain to Bain's credibility and the reliability of his information.  Because the affidavit presented evidence of criminal activity based on the officers' investigation of marijuana growing on Apicelli's property, the details about Bain that Apicelli provides are immaterial and do not affect probable cause for the search.  The affidavit provides ample grounds to show a "fair probability" that evidence of marijuana manufacturing would be found in Apicelli's home.

Similarly, the identification of Apicelli as the person tending the marijuana plants, noted in the affidavit, was not based exclusively on Bain's identification.  The identification was made based on police department, motor vehicle, and criminal records involving Apicelli, along with Bain's identification. Therefore, the affidavit provided ample probable cause to support the warrant application even considering the information that Apicelli argues was improperly omitted.

17

C.  Identification

Apicelli argues that Bain's identification of him in the
surveillance camera recordings and any in-court identification
by Bain are inadmissible.  He contends, without citing any
supporting cases, that Bain's identification is unreliable
because he had an improper motive to identify Apicelli and
because the video footage is so poor that no valid
identification could be made.

The Due Process Clause is implicated in a witness's
identification of a suspect "only when law enforcement officers
use an identification procedure that is both suggestive and
unnecessary."  Perry v. New Hampshire, 132 S. Ct. 716, 724
(2012).  Even when an improper identification procedure was
used, the resulting identification must be suppressed only if
after considering all of the circumstances there is a
"substantial likelihood of a misidentification."  Id. (internal
quotation marks omitted).  In other words, courts must determine
whether a police identification procedure "was unduly
suggestive, and, if yes, whether the identification was still
reliable given the totality of the circumstances."  United
States v. Correa-Osorio, --- F.3d ---, 2015 WL 1812803, at *5
(1st Cir. Apr. 22, 2015).

In this case, the police showed Bain the surveillance video footage taken of a person tending marijuana plants on Apicelli's property.  Bain identified the person as Apicelli.  To the extent Apicelli argues that showing the video footage to Bain was unnecessarily suggestive, he provides no developed argument to support that theory.  See Graf, 2015 WL 1788217, at *8 (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Instead, Apicelli focuses on the allegedly poor quality of the images and Bain's ill will toward him.

The video footage shown to Bain is analogous to showing a witness a single photo for identification.  See United States v. Arruda, 757 F. Supp. 2d 66, 70 (D. Mass. 2010); United States v. Ortiz, 729 F. Supp. 2d 443, 445 (D. Mass. 2010).  A single-photo identification procedure may be, but is not always, unnecessarily or impermissibly suggestive.  United States v. Constant, 2013 WL 441175, at I6 (D. Me. Feb. 5, 2013) (citing cases).  In deciding whether an identification procedure was impermissibly or unnecessarily suggestive, the court must determine whether under the circumstances a better procedure was practicable.  United States v. Holliday, 457 F.3d 121, 126 (1st Cir. 2006).

No details about the procedure used to show Bain the surveillance footage have been provided.  Apicelli does not

argue that another procedure would have been less suggestive.
It is not necessary to determine whether the procedure was
unnecessarily or impermissibly suggestive, however, because even
if that were the case, the totality of the circumstances shows
that Bain's identification was sufficiently reliable to be
admissible.

Apicelli does not dispute that Bain knew him and had seen
him on multiple occasions over a period of two years.  Bain had
encountered Apicelli while they were both walking on Apicelli's
property.  The video footage was taken on Apicelli's property,
showing a person tending marijuana plants there.  As a result,
Bain had a well-founded basis to identify Apicelli.  Although
Bain may also have harbored ill will against Apicelli based on
Apicelli's efforts to exclude Bain from his property, any motive
to falsely identify Apicelli as the man shown in the video
footage is insufficient to undermine the reliability of the
identification.

Apicelli also argues that the resolution of the video
footage was so poor that no identification could be made.
Although Apicelli characterizes the identification as "absurd"
because of the low quality of the footage, he has not shown that

20

to be the case.[2]  More importantly, Bain also identified Apicelli

based on his clothing, mannerisms, and physical characteristics

that were familiar to Bain because of his many interactions with

Apicelli over two years.  There is no likelihood in this case

that Bain misidentified Apicelli as the man shown in the video

footage.

<u>Conclusion</u>

For the foregoing reasons, the defendant's motion to

suppress (document no. 41) is denied.

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge

May 4, 2015

cc:  Sven D. Wiberg, Esq.
     Charles L. Rombeau, Esq.
     Donald A. Feith, Esq.
     United States Marshal
     United States Probation

---

[2] The single frame print from the video footage that Apicelli
provides shows a forested area with identifiable trees and
underbrush and a date and time stamp of 09/14/13, 13:59:31.  No
person is shown in the print.  The blown up version of the print
is unrecognizable, but it is unclear what purpose the blow up
would serve.