UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

   v.                                    Criminal No. 14-cr-012-JD
                                          Opinion No. 2016 DNH 001
<u>Peter Apicelli</u>

<u>OPINION</u>

Peter Apicelli was convicted of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1).  He has moved under 18 U.S.C. § 3143(b) for continued release pending appeal.  The government objects to the motion on the ground that Apicelli cannot show a substantial question of law or fact as required by § 3143(b).  The court denied the motion at the end of the hearing but stayed the order to surrender, pending appeal of the order denying the motion.  The background and reasoning for denying the motion for continued release is provided as follows.

<u>Standard of Review</u>

After conviction and sentencing, detention of a defendant pending appeal is mandatory unless he qualifies for the exception provided by § 3143(b).  <u>United States v. Colon-Munoz</u>, 292 F.3d 18, 20 (1st Cir. 2002).  To meet the requirements of § 3143(b), a defendant must show that he is not likely to flee, that he is not dangerous, that the appeal is not for the purpose of delay, and that the appeal "raises a substantial question of

law or fact likely to result in — (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appeal process."   § 3143(b)(1).

Background

The background information is taken from the court's prior orders that summarize the circumstances leading to Peter Apicelli's arrest, from the subsequent procedural history of the case, and from the evidence presented at trial.

Apicelli rented property at 201 Mason Road, Campton, New Hampshire, from Rene Dubois, beginning in May of 2012.  He did not move out until October of 2013.  The property had wooded parts, open areas, a tree farm, an apple orchard, and a house. Apicelli was the only person renting the property between May of 2012 and October of 2013.

In early September of 2013, the Campton police received a tip from Robert Bain, identified as a concerned citizen, that there might be marijuana growing on the property at 201 Mason Road.  In response to the tip, Sergeant Patrick Payer of the Campton Police Department contacted Sergeant Nick Blodgett of the New Hampshire Drug Task Force.  Blodgett contacted Detective Piche of the New Hampshire State Police.  On September 5, 2013,

Payer, Blodgett, Piche, and Bain went to the property to look for marijuana plants.  They found a patch of twenty to twenty-five marijuana plants growing just inside a wooded area, next to a more open area.  The plants were growing about 200 yards from the house.

Payer learned that Rene Dubois owned the property and it was rented to Apicelli.  Payer also saw two vehicles at the property and determined that they were registered to Apicelli. He then looked up information about Apicelli and found a photograph of him.  Detective Eric James of the Grafton County Sheriff's Department was contacted to set up a surveillance video camera to record the area where the marijuana was growing.

On September 6, Payer, James, and Blogett went back to the property and installed a motion activated video camera.  Over the next ten days, the officers checked the video footage in the camera, but they did not see video footage of a person tending the plants until they checked the camera on September 16.  That day they found video footage that had been taken on September 14 showing a man with dark hair, wearing khaki shorts and a hat, tending the plants.  In one segment, the man was also wearing a red backpack, while tending the plants.

Based on the results of the investigation, Payer applied for and was granted a search warrant for Apicelli's home at 201 Mason Road on September 17, 2013.  Payer, James, Blodgett, and

3

other officers executed the search warrant the same day.  Once inside the house, Payer noticed the smell of marijuana.  In the course of the search of the house, the officers found, took pictures of, and seized as evidence a red back pack, khaki shorts, a piece of mail with Apicelli's name on it and addressed to a post office box in Campton, a grow light, marijuana plants, packaged marijuana, scales, potting soil, plastic bags, and a book titled Marijuana Grower's Insider's Guide.  They also seized the marijuana plants that were growing outside on the property.

Criminalist Shane Zeman from the New Hampshire State Police Crime Laboratory collected samples of the plants seized from Apicelli's property.  He tested the samples in the lab.  Zeman's testing found that the plant samples were consistent with marijuana.

Apicelli originally was arrested by state authorities, but the case was referred to the United States Attorney's office in New Hampshire in December of 2013.  The indictment against Apicelli was filed on January 22, 2014.  Apicelli's initial appearance in federal court was on February 28, 2014.  During the next year, the trial was continued several times at Apicelli's request (document nos. 9, 12, 15, 19, and 22).

In February of 2015, Apicelli moved to dismiss the indictment or, in the alternative, to compel the government to

4

provide discovery, and the trial was continued again (document
no. 25) in the interest of justice to allow time for adequate
preparation and consideration of Apicelli's motion to dismiss.
At the hearing on the motion to dismiss, Apicelli sought three
items of outstanding discovery, which were discussed and
resolved.  The court found that the government had not failed in
any material respect to comply with discovery requirements or
requests.  The motion to dismiss was denied as there were no
grounds for sanctions of any kind (document no. 32).

Once again, Apicelli moved to dismiss, arguing a violation
of the Speedy Trial Act, and sought another continuance.  A
hearing was held on the motion for a continuance, and defense
counsel represented that a continuance was needed to accommodate
his scheduling conflicts and to allow him time to file a motion
to suppress.  The government was prepared to try the case.

Trial was continued in the interest of justice to allow
defense counsel time to effectively prepare the defense
(document no. 38).  The court denied the motion to dismiss,
finding that no violation of the Speedy Trial Act had occurred
(document no. 40).  Trial was scheduled to begin on May 19,
2015.

Appicelli moved to suppress the evidence taken in the
search of his house but did not request a hearing.  He argued
that the warrant was invalid because the investigation and

5

discovery of marijuana plants were the result of trespassing on his property and because Payer's affidavit in support of the warrant application was selective and deceptive.  He also sought to suppress Bain's identification of him as the person shown in the videotape footage tending marijuana plants.

In the order denying the motion to suppress (document no. 44), the court noted that Apicelli had not requested a hearing but, nevertheless, considered the applicable standard and found that grounds did not exist to hold a hearing on the motion.  The court concluded that Bain was not acting as a police agent when he walked on Apicelli's property and provided the tip to the police.  The court found that the search of Apicelli's property and home did not violate the Fourth Amendment, that the affidavit provided in support of the warrant application was based on the investigation, not on Bain's tip, making information about Bain's motive or ill will immaterial, and that Bain's identification of Apicelli in the video footage did not violate due process.  Apicelli moved for reconsideration of that order, which was denied on May 14, 2015 (document no. 54).

The day before trial was to begin, Apicelli moved to dismiss the indictment based on the government's recent disclosure of Payer's grand jury testimony and an email from Payer to the Assistant United States Attorney ("AUSA") who was handling the case at that time.  He argued that the government

6

had failed to comply with discovery obligations and that the government had engaged in misconduct.  He also argued that the evidence taken during the search of his home and property should be suppressed because of alleged inconsistencies between Payer's affidavit supporting the search warrant and his grand jury testimony.

With the assent of counsel, the trial was continued to allow time for consideration of the motion to dismiss and for certain additional filings (document no. 60).  The motion to dismiss and to reconsider the order denying his motion to suppress was denied on May 27, 2015, (document no. 69).

In the meantime, Apicelli filed a fourth motion to dismiss again alleging discovery abuses by the government and violation of the Speedy Trial Act.  He also sought an order to compel the government to provide additional information about police dispatch recordings and Bain's involvement with the police.  The court denied the motion (document no. 70).

The court granted the government's motion to preclude defense counsel from making jury nullification arguments and from encouraging the jury to use nullification to acquit Apicelli (document no. 66).  Apicelli's motion for a jury view was denied (document no. 70).

Apicelli moved for reconsideration of the orders (documents 69 and 70) denying his motion to dismiss and his motion to

dismiss or compel discovery.  In support, Apicelli argued that
the court improperly failed to hold evidentiary hearings on his
motions, that his Sixth Amendment right to a speedy trial had
been violated, that the government had not provided full
discovery, that the government had violated the Fourth
Amendment, and that he had been the victim of selective
prosecution.

In denying the motion (document no. 73), the court
explained that Apicelli had failed to show that a hearing was
necessary because of disputed material facts.  The court held
that Apicelli had never developed an argument based on the Sixth
Amendment right to a speedy trial but that no violation had
occurred, that he had not shown that the government failed to
provide discovery, and that he provided no developed argument to
show a Fourth Amendment violation.  The issue of selective
prosecution was raised for the first time in the motion for
reconsideration, making it an unavailable ground for
reconsideration.  The court also found the theory meritless.

The jury was drawn as scheduled on June 2 but was not
sworn.  Opening statements and evidence were scheduled to begin
on June 8.  On Sunday, June 7, Apicelli moved to dismiss or to
compel after the government sent defense counsel four compact
disks of the "false trigger" video footage on Saturday, June 6.
Apicelli charged the government with discovery violations, and

8

alternatively sought to continue the trial and to compel the government to provide additional discovery.[1]

A hearing on the motion was held on Monday morning, June 8, while the jury waited for trial to begin.  Defense counsel stated that the compact disks comprised four to six hours of video footage and that he could not begin the trial without having an opportunity to review the footage with Apicelli and to evaluate the videos to determine whether and how they might affect the defense.  The AUSA characterized the footage as videos of nothing and videos of rain falling on leaves with no evidentiary value.

The trial was continued to allow adequate time for defense counsel to evaluate the video footage and was rescheduled for July.  The motion to compel the government to produce police dispatch communications was denied (document no. 75).  The motion to dismiss was denied because Apicelli showed no grounds for sanctions based on the late production of the additional video footage and because any issue about dispatch recordings had been resolved (document no. 77).

On July 2, 2015, Apicelli again moved to dismiss the charge against him or, in the alternative, to preclude the government

---

[1] Apicelli sought recordings of police dispatch communications for additional days when there were false trigger video recordings.

from using the videotape evidence against him at trial on the ground that the videotapes were not timely or fully disclosed. He also moved to dismiss on the ground that his right to a speedy trial had been violated.  Because Apicelli failed to show any grounds for a hearing, his request for a hearing was denied. The court denied the motion to dismiss, reiterating that the government had met its discovery obligations and no grounds had been shown for sanctions and explaining, again, that his right to a speedy trial had not been violated (document no. 84). Apicelli's motion for reconsideration was denied.[2]

A second jury was drawn on July 21.  Apicelli moved, in limine, to preclude evidence of distribution and intent to distribute marijuana, invoking Federal Rules of Evidence 403 and 404(b).  He also asked that the government be required to instruct its witnesses not to testify about any evidence of distribution of marijuana.  The court denied the motion, concluding that the challenged evidence of distribution, such as bags, baggies, and scales, was intrinsic evidence of manufacturing marijuana under 21 U.S.C. §§ 802(15) and 802(22)

---

[2] The motion for reconsideration primarily addressed the order denying Apicelli's motion to suppress and his motion for reconsideration of that order and again argued that the search warrant was invalid.  The order denying his motion to suppress was issued on May 4, 2015, and his motion for reconsideration of that order was denied on May 14, 2015.  Apicelli provided no justification for again moving for reconsideration of the order denying the motion to suppress months after it was issued.

and was not excludable under Rule 404(b) or Rule 403 (document no. 89).  Although the evidence was not excluded, the court instructed the government to "carefully instruct its witnesses not to testify about the distribution or sale of marijuana and not to testify about any conjecture on those matters."

The case was tried on July 28, 29, and 30, 2015.  The government called Rene Dubois, Sergeant Payer, Sergeant Blodgett, Detective James, and Criminalist Zeman as witnesses. The jury returned a verdict of guilty on July 30.

Apicelli moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (document no. 98).  In support, he argued that there was insufficient evidence to identify him as the person who manufactured marijuana in light of his theories of innocence, that the government introduced and relied on improper and inadmissible evidence, and that the jury's short deliberation undermined the verdict.  The court denied the motion (document no. 100), concluding that evidentiary challenges could not be raised in a Rule 29 motion, that the government had no obligation to refute Apicelli's theories of innocence, that the substantial circumstantial evidence linking Apicelli to the marijuana manufacturing operation was more than sufficient, and that the brief jury deliberations provided no basis for a judgment of acquittal.

11

Apicelli was sentenced on November 17, 2015, to imprisonment for twelve months and one day with two years of supervised release.  He was ordered to surrender to the institution designated by the Bureau of Prisons before 2:00 p.m. on January 8, 2016.  Apicelli filed a notice of appeal on November 17, 2015.

On December 30, 2015, a hearing was held on his motion for release pending appeal.  After counsel for Apicelli and the Assistant United States Attorney presented argument on the motion, the court denied the motion but stayed the order to surrender pending appeal of the order.

## Discussion

Apicelli moved pursuant to § 3143(b) to stay the order to surrender and to continue his release pending appeal.  The government objected, contending that Apicelli had not met the requirement of § 3143(b)(1) that his appeal "raises a substantial question of law or fact likely to result in — (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of the appeal process."  The government did not contest Apicelli's showing

that he is not likely to flee, that he is not dangerous, and that the appeal was not filed for the purpose of delay.

A.  <u>Flight, Dangerousness, Delay, and Duration of Sentence</u>

Apicelli has shown that he is not likely to flee, that he is not dangerous, and that the appeal is not for the purpose of delay.  At the hearing, counsel agreed that those factors were satisfied.  Therefore, the only issue is whether his appeal raises a substantial question of law or fact that is likely to result in overturning his conviction, no sentence, or a sentence that would be less than the time served plus the duration of the appeal.

Because he was sentenced after the motion for release was filed, Apicelli did not address sentencing issues.  At the hearing, counsel argued that as a matter of equity, Apicelli should be not be incarcerated pending appeal because his sentence may be served before the decision on appeal is issued.

Apicelli was sentenced to twelve months plus one day of imprisonment.  The court cannot predict whether the sentence will have been served before the appeal is resolved but concedes that is a possibility.  Nevertheless, because Apicelli did not show a substantial question of law or fact for appeal, that issue need not be resolved.

B.   Substantial Questions of Law or Fact

     For purposes of a motion pursuant to § 3143(b)(1), the

standard of a substantial question that is likely to result in

reversal, a new trial, a reduced sentence, or no imprisonment is

to be applied flexibly so that "a question that can be regarded

as 'close' will often suffice." Colon-Munoz, 292 F.3d at 20

(quoting United States v. Bayko, 774 F.2d 516, 523 (1st Cir.

1985)).  In Bayko, the First Circuit adopted the interpretation

of "substantial question" used in other circuits to mean "'a

close question or one that very well could be decided the other

way.'"  Bayko, 774 F.2d at 523 (quoting United States v.

Giancola, 754 F.2d 818, 901 (11th Cir. 1985)).  To the extent a

defendant relies on new issues to support a § 3143(b)(1) motion,

he must show that a new issue is either plain error or "'so

compelling as virtually to insure appellant's success.'" United

States v. Curley, 2015 WL 1539619, at *9 (D. Me. Apr. 6, 2015)

(quoting Bayko, 774 F.2d at 518.)

     The twelve issues that Apicelli raises to show substantial

questions of law or fact are listed on pages two and three of

his four-page motion.[3]  He provides little or no explanation of

what errors those issues are intended to raise.  In its

---

     [3] Although the pages of the motion are all numbered "2", the
motion has four pages.

objection, the government addresses each issue and contends that none raises a substantial question.

At the hearing, defense counsel argued that this was an unusual case because it was transferred from the state to the United States Attorney for prosecution and that all twelve issues raised in his motion, along with several others raised or alluded to for the first time during the hearing, were substantial questions under § 3143(b)(1), but provided additional argument on only a few of the issues.  Counsel also raised some new issues that were not included in the motion and alluded to other possible issues that might be raised on appeal.

    1.  <u>Motion to Suppress</u>

The first issue Apicelli raises in the motion is stated as "Denial of suppression or even the opportunity for an evidentiary hearing."  Apicelli apparently intends to argue that the court erred in denying his motion to suppress and erred in not holding a hearing on the motion but he provided no further analysis of what error occurred or why he was entitled to an evidentiary hearing.  At the hearing on the motion for continued release, defense counsel argued that subsequent events supported a hearing on the motion to suppress but provided little developed reasoning to support that theory.

Apicelli did not request a hearing in his motion to suppress. Despite the lack of a request for a hearing or any argument to show that a hearing was needed, the court considered the circumstances and the issues under the applicable standard and found that a hearing was not required.

To the extent Apicelli argues, again, that the court erred in deciding his motion to suppress without an evidentiary hearing, he is mistaken. The issues raised in the motion to suppress did not show that there were "factual disputes which, if resolved in [Apicelli's] favor, would entitle him to the requested relief." United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013). Further Apicelli's motion did not show that information about Bain was omitted "knowingly and intentionally or with reckless disregard for the truth" or that the omitted information "was necessary to the finding of probable cause." United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012). Therefore, as the court determined, the motion did not support the need for a hearing. Apicelli did not show then nor in support of the motion for continued release that any factual disputes required a hearing.

In support of his motion to suppress, Apicelli argued that the warrant to search his home was obtained illegally because the information provided in the supporting affidavit was the result of Fourth Amendment violations. He also argued that

16

Bain's identification of him in the surveillance video footage was unreliable and that due process required suppression of the identification.

The issues Apicelli raised in support of his motion to suppress and in subsequent motions seeking suppression of the evidence seized from his home, including subsequent arguments for a hearing, are thoroughly discussed in the court's prior orders.  See, e.g. Document nos. 44, 54, and 69.  None of the issues Apicelli raised in those motions presented a close question.

With respect to Bain's identification of Apicelli as the man seen in the video footage tending the marijuana plants, the court has explained repeatedly that the identification was reliable based on Bain's familiarity with Apicelli, despite the quality of the videotape.  Therefore, Bain's identification did not violate due process and, properly, was not suppressed. Significantly, the issue of suppressing Bain's identification became moot when the government decided not to call Bain as a witness at trial.  As a result, Bain did not identify Apicelli at trial.

The denial of the motion to suppress does not raise a substantial question of law or fact.

2.  <u>Evidence of Mushroom Grow</u>

Apicelli contends that Sergeant Blodgett's testimony at trial about a "mushroom grow" violated Rule 404(b) and the court's order on his motion in limine.  Although Apicelli also alleges that there were "[v]iolations of Motion in Limine and repeated introduction of evidence barred by Rule 404(b)," he does not challenge any other evidence.  He cannot show a substantial question for purposes of § 3143(b)(1) based on unidentified evidentiary errors.

Before trial, Apicelli moved in limine to preclude evidence of distribution or intent to distribute marijuana.  The court denied the motion because the challenged evidence, consisting of bags, baggies, and scales, was intrinsic evidence of manufacturing marijuana under 21 U.S.C. §§ 802(15) and 802(22) and were not excludable under Rule 404(b) or Rule 403 (document no. 89).  The court directed the government to instruct its witnesses not to testify about distribution or sale of marijuana or about conjecture on those matters.

While Blodgett was testifying during trial, he was asked to describe what he saw when he entered Apicelli's house during the search.  Blodgett testified that he saw marijuana in several forms and then said he saw "what we believe to be mushroom grow at one point."  Defense counsel objected.

At sidebar, defense counsel argued that the mention of the mushroom grow required a mistrial.  The government objected. The court denied the request for a mistrial but offered to give an instruction to have the jury disregard the evidence.

Defense counsel asked that the jury be instructed that the witness should never have introduced evidence of the mushroom grow and "should have been instructed not to introduce other bad act evidence."  The court explained that the additional instructions requested would only compound the issue and reiterated that the jury would be instructed not to consider the testimony about the mushroom grow.

Defense counsel again objected, stating:  "It's a tyrannosaurus and you can't say okay, ignore the tyrannosaurus." The court reminded defense counsel that juries are presumed to follow the court's instructions.  The court then instructed the jury as follows:  "Members of the jury, disregard the testimony regarding the mushroom grow.  That is not to be considered by you in this case.  It's irrelevant to your concerns."

Defense counsel argued at the hearing that the court erred in denying his motion for a mistrial, but that issue does not present a close question.  "Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes the jury's exposure to the evidence is likely to prove beyond realistic hope of

19

repair." United States v. Trinidad-Acosta, 773 F.3d 298, 306
(1st Cir. 2014) (internal quotation marks omitted).  On appeal,
the court reviews the denial of a mistrial by considering "the
totality of the circumstances to determine whether the defendant
has demonstrated the kind of clear prejudice that would render
the court's denial of his motion for a mistrial a manifest abuse
of discretion."  Id. (internal quotation marks omitted).  Juries
are presumed to follow instructions, and "curative instructions
are ordinarily an appropriate method of preempting a mistrial."
United States v. Peake, 804 F.3d 81, 95 (1st Cir. 2015)
(internal quotation marks omitted).

In this case, the evidence of Apicelli's manufacture of
marijuana was overwhelming.  Taken in the context of the amount
of marijuana found growing, drying, and ready for packaging in
Apicelli's home and on his property and all of the equipment in
his home used for manufacturing marijuana, Blodgett's mention of
a mushroom grow is inconsequential.  Further, the instruction
appropriately directed the jury to disregard the testimony about
the mushroom grow.  In the absence of any evidence to the
contrary, the jury is presumed to have followed the instruction.

The argument that Blodgett's testimony violated the order
on his motion in limine appears to be based on a
misunderstanding of the order.  The order denied Apicelli's
motion in limine, which addressed evidence of marijuana

20

distribution, not mushroom grows or any other drug-related items found during the search.  The government was directed to instruct their witnesses not to testify about <u>marijuana</u> distribution or sale.[4]  Further, as explained above, any prejudice that Blodgett's testimony might have caused was cured by the jury instruction.  Therefore, Apicelli does not raise a substantial question of law or fact by suggesting that the mushroom grow testimony violated the order denying his motion in limine.

### 3.  <u>Hearsay</u>

The third issue listed is:  "Introduction of hearsay regarding out-of-court identification by <u>de facto</u> police agent who was not called as a witness by the Government."[5]  Although far from clear, Apicelli apparently is referring to Payer's

---

[4] At the hearing, defense counsel argued that the motion in limine was directed at all bad acts.  Although he could have, counsel did not raise the mushroom grow in his motion or otherwise seek an order directed at the evidence of the mushroom grow.  The court's order, which denied the motion in limine and directed instruction to government witnesses, addressed only marijuana.  The court cannot be expected to act on matters that are not directly brought to its attention.

[5] Apicelli has never provided evidence that Bain was acting as an agent of the Campton police when he observed suspected marijuana plants on Apicelli's property.  Nevertheless, defense counsel continued to argue that theory at the hearing as if evidence existed to support it.

testimony at trial about the investigation conducted following Bain's tip.

The prosecutor asked Payer what investigative steps he took after he got the surveillance videotape footage showing a man tending the marijuana plants at 201 Mason Road.  Payer answered that the next step was to get the person in the video identified.  The prosecutor asked Payer if he spoke to anyone, and Payer answered that he spoke to Bain.  The prosecutor then asked Payer what he did next.

Defense counsel objected and again moved for a mistrial. He argued that Payer's testimony about speaking to Bain in the context of getting the person in the video identified was for the purpose of getting Bain's identification of Apicelli into evidence without having Bain testify.  Defense counsel argued that the intended inference was that Bain had identified Apicelli in the video.  Based on that inference, counsel asserted that Payer's testimony was inadmissible hearsay, a "run around the hearsay rule."  The prosecutor explained that he was asking about the investigative steps taken by the police and that he then was going to move on to ask about obtaining the search warrant.

The court denied the request for a mistrial.  Instead, the court instructed the jury as follows:  "Members of the jury, you are to disregard the last question and answer and you're not to

draw any inference that this witness identified the defendant from these videos."  Defense counsel asked for a further conference to add to the instruction that the jury should not draw an inference about Bain's identification.  To avoid using Bain's name, the court further instructed as follows:  "All right.  I'm going to add to that instruction that you're not to draw any inference from the last question and answer that an identification was made by anybody from these videos."

To the extent Apicelli argues that Payer's testimony introduced hearsay, he is mistaken.  Payer did not testify that Bain had identified Apicelli in the videos.  Therefore, no out-of-court statement was introduced.  Instead, Payer testified that as part of the investigation and to get the person identified he had spoken to Bain, without saying what the result had been.  Any inference that Bain did make an identification of Apicelli was addressed by the curative instruction.[6]

Therefore, Payer's testimony was not grounds for a mistrial nor does it provide grounds to reverse the conviction.

---

[6] At the hearing, defense counsel appeared to argue that the court's instruction erroneously represented that no identification of Apicelli had ever been made from the video. That is not the instruction that was given, and instead the instruction appropriately focused on any inference that might be drawn from Payer's testimony.

4.  Identity

Apicelli argues, as he did in his Rule 29 motion, that there was insufficient evidence to identify him as the person who manufactured marijuana at 201 Mason Road.  The court addressed that theory in denying the Rule 29 motion.  See Order, Sept. 2, 2015, Doc. no. 100.  The direct and circumstantial evidence at trial linked Apicelli to the marijuana that was growing and being processed at 201 Mason Road, and there was no evidence that any other adult lived at that address or tended the marijuana plants on the property.

At the hearing, defense counsel argued that the evidence was insufficient because the government had not refuted all possible theories about others who might have been responsible for the marijuana on Apicelli's property and in his home. However, "[t]o gain a conviction, the government need not eliminate every possible theory consistent with the defendant's innocence." United States v. Mehanna, 735 F.3d 32, 47 (1st Cir. 2013) (internal quotation marks omitted).

Therefore, the evidence identifying Apicelli as the person who was manufacturing marijuana was more than sufficient to support his conviction.  On appeal, the court will look at the evidence in the light most favorable to the jury's verdict. United States v. Lasseque, 806 F.3d 618, 620 (1st Cir. 2015). The appeals court will then decide "whether a rational jury

could have concluded that the government proved each element of the charged offense[] beyond a reasonable doubt."  United States v. Dudley, 804 F.3d 506, 520 (1st Cir. 2015).

With that standard in mind, Apicelli has not shown a substantial question as to whether there was sufficient evidence showing that he was the person manufacturing marijuana at 201 Mason Road.

### 5.   Videotapes

Apicelli states as the fifth appeal issue:  "Introduction of evidence without sufficient foundation, including, but not limited to, video evidence of dubious provenance and quality, and evidence related to plants seized."  He provides no further explanation of that issue or issues.  To the extent he is challenging evidence other than the videotapes that were played during trial, he has not developed those issues sufficiently to allow review.[7]  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("district court is free to disregard arguments that are not adequately developed"); see also Coons v. Indus. Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).  For that reason, any issues concerning foundation for

---

[7] Apicelli does not explain what evidence "related to plants seized" he is challenging.  To the extent he intended to raise an issue about the foundation for laboratory testing results of the seized marijuana plants, that issue is addressed in the context of his challenge to the expert.

evidence other than the videotapes are waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Evidence must be authentic, and the requirement is satisfied if the "showing is sufficient to allow a reasonable person to believe that the evidence is what it purports to be." United States v. Savarese, 686 F.3d 1, 10 (1st Cir. 2012) (citing Fed. R. Evid. 901(a)).  The showing necessary under Rule 901(a), therefore, is "undemanding" and requires only a determination that "there is a reasonable probability that the evidence is what it is purported to be." United States v. Appolon, 715 F.3d 362, 371 (1st Cir. 2013).  "Evidence can be authenticated in numerous ways, including through the testimony of a witness with knowledge 'that an item is what it is claimed to be.'" Id. (quoting Rule 901(b)(1)).  When this court determines that an adequate foundation has been provided to show that evidence is authentic, that ruling is reviewed for abuse of discretion.  United States v. Bowles, 751 F.3d 35, 40-41 (1st Cir. 2014); United States v. Anderson, 452 F.3d 66, 81 (1st Cir. 2006).

In this case, the foundation provided for the videotape evidence was solid and more than sufficient to establish a reasonable likelihood that the videotapes were taken on the property at 201 Mason Road in Campton, New Hampshire, on the dates shown in September of 2013.  Detective James testified

about the surveillance video camera that he installed, the installation process, the workings of the camera including the motion detector trigger, the visits to the camera site, what was seen on the tapes, and that the videotapes were recorded by the camera.[8]  Sergeant Blodgett also testified about the surveillance camera.

Apicelli's challenges to the quality of images on the videotapes do not affect their authenticity.  In any case, the videotapes showed a man wearing recognizable clothing, including khaki shorts and a hat; carrying a red backpack; and tending marijuana plants at 201 Mason Road.  The images were sufficiently clear for the jury to draw its own conclusions.

At the hearing, defense counsel raised an issue about whether the videotapes met "government guidelines" but did not provide any explanatory detail about what guidelines were at issue.  Counsel stated that the guidelines should have been disclosed in discovery and seemed to suggest that the videotapes should have been excluded based on the guidelines.  This issue is not sufficiently developed to allow review.

---

[8] At the hearing, defense counsel appeared to challenge James's testimony on the ground that he "was no expert at all." James did not testify as an expert but instead provided factual testimony about the video camera, the installation, and the recordings.  Therefore, defense counsel's argument is misplaced.

Apicelli has not shown a substantial question of law or
fact with respect to the foundation for the videotape evidence.

6.  Discovery

Apicelli states that "[d]elayed or withheld discovery"
forced him to move to obtain discovery, "stopping the speedy
trial clock."  The court has addressed Apicelli's discovery
concerns repeatedly and concluded that no discovery violations
occurred.  See Orders, doc. nos. 32, 69, 70, 73, 77, and 84.
The court also concluded that any discovery delays did not
implicate the Speedy Trial Act.  See, e.g., Order, doc. no. 70
at 5-8.  Apicelli provides no argument to show why the court's
prior orders are erroneous or to show that any discovery issue
was a close question.

At the hearing, defense counsel argued that the government
improperly delayed producing the false trigger videos until days
before trial was scheduled to begin in early June of 2015.  As
the government pointed out, defense counsel knew about the false
trigger videos when the videos showing the man tending marijuana
plants were produced, long before June of 2015, and did not ask
for them.  The government produced the false trigger videos,
which the government concluded were immaterial to the case, in
response to Apicelli's motion to reconsider the court's orders

denying prior motions to dismiss in which he mentioned other videos taken on his property.

Defense counsel represented at the hearing that the court found the false trigger videos should have been produced earlier, which is not correct.  The court made no such finding.

The first video was taken while the camera was being installed and tested and shows the officers who participated in the installation.  The false trigger videos were recorded because of weather or passing animals that triggered the motion detector on the camera.  The false trigger videos show nothing of any relevance to the defense.  Defense counsel cross examined Detective James extensively, using the test video, to show that the people in the test video were not clearly identifiable.

No discovery abuses occurred.  Defense counsel failed to ask for the false trigger videos, despite knowing of their existence.  Then, defense counsel was able to use the videos, which had virtually no evidentiary value, at trial.  Therefore, the discovery issues do not raise close questions for appeal.

### 7.  Speedy Trial Act

Apicelli contends that the Speedy Trial Act was violated because, by his calculation, more than 245 non-excludable days elapsed between his arrest by state authorities and his trial here.  He is mistaken.

Under the Speedy Trial Act, when the defendant enters a plea of not guilty, "the trial of a defendant . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever day last occurs." 18 U.S.C. § 3161(c)(1). Therefore, when a defendant is arrested on state charges and then indicted on federal charges, the time for purposes of the Speedy Trial Act begins with the federal proceedings. See also United States v. Skanes, 17 F.3d 1352, 1353 n.1 (11th Cir. 1994); United States v. Wilson, 657 F.2d 755, 767 (5th Cir. 1981); United States v. Hicks, 2013 WL 3090284, at *4, n.4 (E.D. Pa. June 20, 2013).

The time Apicelli adds to the Speedy Trial Act clock that elapsed before his first appearance in federal court on February 28, 2014, does not count. The court addressed the Speedy Trial Act in its order issued on April 17, 2015 (document no. 40), in its order issued on May 28, 2015 (document no. 70), and again in its order issued on July 17, 2015 (document no. 84). The court also addressed the Sixth Amendment right to a speedy trial in the order issued on June 4, 2015 (document no. 73).

Apicelli has not shown that the calculations in the April 17 order were incorrect. Instead, he argues that the continuance granted on June 8 did not stop the Speedy Trial Act

clock because the continuance was caused by the government's
disclosure of the false trigger tapes days before trial.

The government disclosed the existence of the videotapes
taken on Apicelli's property early in the case when it produced
the videos showing the man tending marijuana plants.  The
government did not produce the other videotapes, the test tape
recorded during the camera installation and the false trigger
tapes, because it assumed that those were immaterial.  Apicelli
did not ask for those videotapes.

In his June 1 motion for reconsideration, Apicelli
mentioned that the government had not produced other videotapes
taken on his property.  The government then produced the false
trigger tapes as soon as they were available.  Apicelli moved to
dismiss and for a continuance to allow time to review the tapes.
Defense counsel argued that the false trigger videos could be
material to the defense and insisted on having adequate time for
review.[9]

The government objected.  Following a hearing, the
continuance was granted, in the interest of justice, to allow

_____

[9]  At the hearing on the motion for continued release, defense
counsel argued that the false trigger tapes were impeachment
material because he used the test tape to show that Detective
James could not identify with certainty the people in the tape.
Because Apicelli was not identified at trial from the
videotapes, the clarity of the tapes for identifying faces was
not material, and the test tape was not impeachment evidence.

time for defense counsel and Apicelli to review the false
trigger videos and time for the government to respond to, and
the court to consider, Apicelli's motion to dismiss filed the
day before.  Order, June 8, 2015 (doc. no. 75).  The motion to
dismiss was denied on June 16, 2015 (document no. 77).

Time is excluded from the days counted for purposes of the
Speedy Trial Act from the date the defendant files a pretrial
motion until the disposition of the motion.  § 3161(h)(1)(D).
In addition, time "resulting from a continuance granted by any
judge . . . at the request of the defendant or his counsel
. . ., if the judge granted such continuance on the basis of his
findings that the ends of justice served by the granting of such
continuance outweigh the best interests of the public and the
defendant in a speedy trial" is excluded.  § 3161(h)(7)(A).  The
Speedy Trial Act clock stopped when Apicelli moved to dismiss on
June 7, 2015, and the court then granted the continuance he
requested on June 8.

In sum, Apicelli continues to erroneously add the time that
elapsed after his state arrest and before his first federal
appearance to the speedy trial clock.  The June 8 continuance
was properly granted, at his request, and the time was also
excluded due to his motion to dismiss.  Apicelli has not shown
that his Speedy Trial Act issue raises a substantial question of
law or fact.

8.  Expert Testimony

Apicelli contends that the government failed to provide sufficient foundation "for expert testimony, opinions, and conclusions (e.g., insufficient foundation for certification/qualification of Government expert; insufficient testing . . . .)"[10]  Although Apicelli does not identify which witness he is challenging, the government and the court presume that he intended to challenge the testimony of Criminalist Shane Zeman from the New Hampshire State Police Crime Laboratory, the only expert witness who testified at trial.[11]

The admissibility of expert opinion evidence is governed by Federal Rule of Evidence 702.  Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if" the witness's opinion "will help the trier of fact to understand the evidence or to determine a fact in issue" and if the opinion is reliable.  Whether or not an expert's opinion has a reliable foundation is determined by examining the expert's methodology and the bases for the opinion.  Samaan v. St. Jospeph Hosp., 670

---

[10] Apicelli did not request a hearing before or during trial to assess the expert opinion evidence.  During trial, counsel asked to voir dire Zeman on an unrelated hearsay objection, which the court did not allow.

[11] To the extent Apicelli intended to challenge any another witness, he did not sufficiently identify that witness to allow the government to respond or the court to review the issue.

F.3d 21, 31-32 (1st Cir. 2012).  On appeal, the district court's decision to admit expert witness testimony is reviewed for an abuse of discretion.  United States v. Moon, 802 F.3d 135, 148 (1st Cir. 2015).

### i.  Qualification

During trial, Zeman testified that he worked as a Criminalist II in the drug section of the New Hampshire State Police Forensic Laboratory.  He has worked in the Forensic Laboratory for eleven years and was a senior drug chemist.  In his job, Zeman stated that he analyzed unknown substances to determine whether they contained controlled drugs.  Zeman also testified that he has a bachelor's degree from the University of New Hampshire and that he had been trained in the Laboratory to identify controlled drugs, including marijuana.  He typically works on fifty to sixty cases a month.

In response to defense counsel's objection that the government had not provided sufficient foundation for Zeman's opinions, the court ruled that Zeman was qualified to give expert opinions about the plants he tested.  Apicelli raises no credible issue as to Zeman's qualifications to reliably test the plants seized.

ii.  Testing

Apicelli challenges Zeman's test results on the grounds that he performed only four tests which were insufficient to determine the number of plants, the "test used colorimetric and [was] not specific for marijuana," and "test results were not confirmed by another analyst or properly documented, and therefore not reproducible or reliable enough to meet the evidentiary standard."  None of these arguments undermines the admissibility of Zeman's opinions.

As the government points out in its objection, Apicelli's representation that Zeman performed only four tests, "3% out of a supposed 120 plants" is incorrect.  Zeman testified that he went to a storage facility where the police had placed the marijuana plants on pallets.  He wanted to get a count of the number of plants.

He organized the plants into groups by size, and did a macroscopic or visual examination for identification.  The macroscopic examination included looking to see if the plants had root balls, which would constitute a plant, and looking at the plant's appearance and characteristics to identify it as marijuana.  Zeman counted 122 plants that appeared to be marijuana.  He took cutting samples from random plants.  He

ground together some cuttings to test at the laboratory.  The samples taken from the plants were contained in four bags.[12]

Back at the laboratory, Zeman undertook the tests used to identify marijuana.[13]  He examined the samples microscopically, looking for characteristic hairs, which he found.  He then chemically tested the samples to determine whether the plants that looked like marijuana had the chemicals unique to marijuana.  He used the two-part Duquenois-Levine test, which is a color change test, to determine whether the samples contained cannabinoids.  The samples tested positive.

Apicelli provides no developed argument to show that the Duquenois-Levine test was inaccurate or insufficient to identify the samples as marijuana.  That test is commonly used in criminal cases to identify marijuana.  See, e.g., State v. Conlin, 2014 WL 1272118, at *6 (Minn. Ct. App. Mar. 31, 2014); State v. Delarosa, 288 P.3d 858, 860 (Kan. Ct. App. 2012); United States v. Perez, 2012 WL 243232, at *3 (W.D. La. Jan. 25, 2012); State v. Hatton, 2010 WL 4409576, at *2-*3 (Ohio Ct. App. Nov. 4, 2010) (explaining reliability of Duquenois-Levine test

---

[12] Zeman also testified about and established the chain of custody of the plants and samples.  To the extent defense counsel challenged the chain of custody of the marijuana samples at the hearing, the argument is not supported by the record.

[13] Apicelli appears to have misinterpreted Zeman's testimony about the number of tests performed on the marijuana samples.

in conjunction with microscopic analysis to distinguish marijuana from hashish); Manzano v. Clay, 2010 WL 3000185, at *6 (C.D. Cal. June 11, 2010); People v. Skidmore, 2008 WL 2514193, at *1 (Mich. Ct. App. June 24, 2008).

Therefore, Apicelli's challenge to the expert opinion testimony at trial does not raise a substantial issue of law or fact.

### 9.  Jury Selection

Apicelli asserts that the jury selection process was unfair due to the "disqualification of pro-legalization jurors, violating guarantee of jury of peer [sic]."[14]  As such, Apicelli is representing that the court improperly excluded potential jurors from serving on the jury panel based on their beliefs about legalization of marijuana.  A review of the record of jury selection process shows that Apicelli is wrong and that jurors with opinions about legalization of marijuana were excused only if they could not put their opinions aside and decide the case impartially.

"The Constitution guarantees a criminal defendant the right to a fair trial by a panel of impartial, indifferent jurors." United States v. Villar, 586 F.3d 76, 84 (1st Cir. 2009)

---

[14] Apicelli did not challenge the jury selection process under 28 U.S.C. § 1867.

(internal quotation marks omitted).  One aspect of an impartial jury is "a jury capable and willing to decide the case solely on the evidence before it."  Id. (internal quotation marks omitted).  A district court's determination of jurors' impartiality is given special deference on appeal.  United States v. Delgado-Marrero, 744 F.3d 167, 201 (1st Cir. 2014).

The court asked the potential jurors twenty-three questions during voir dire.  Pertinent to the issue of legalization of marijuana, the court asked the following questions:

10.  Have you ever been arrested for or convicted of a crime involving marijuana or any other illegal drugs?

11.  Has anyone in your immediate family ever been arrested for or convicted of a crime involving marijuana or any other illegal drug?

12.  Have you or has any member of your immediate family ever had a drug problem, whether it involved prescribed or illegally obtained drugs?

13.  Have you or has anyone in your immediate family ever been prescribed marijuana or a marijuana derivative for medicinal purposes?

14.  Do you belong to any organization that supports or promotes the idea that marijuana should be decriminalized or have you requested any information from such an organization?

15.  Do you have any opinions or views concerning marijuana
or other illegal drugs that would prevent you from being a fair
and impartial juror in this case?

In response, several potential jurors indicated that they
had issues about drug use and legalization of marijuana.  Two
potential jurors who said that they supported legalization of
marijuana were excused because they stated that they could not
put aside their opinions and could not be fair and impartial in
deciding the case.  One juror who said she supported
legalization but could put those opinions aside, also stated
that she would favor testimony by law enforcement officers over
other testimony.  She was excused because she said she could not
put aside her bias in favor of police officers, even if she had
been instructed otherwise.  Another juror who said she would
favor testimony of police officers was also excused.

On the other hand, several potential jurors who indicated
that they supported legalization of marijuana were qualified
when they stated that they could put their opinions aside and
decide the case impartially based on the evidence presented.
The government objected to a potential juror who indicated that
he supported legalization of marijuana and used the word
"biased" to describe his view.  The court qualified that juror
because he said he could put his opinions aside.  No juror who

stated that he or she could put his or her opinions aside for
purposes of deciding the case was excused from the jury.

Therefore, Apicelli's assertion that jurors who supported
legalization of marijuana were improperly excluded from the jury
is not supported by the record and does not present a
substantial question of law or fact.

If, instead, Apicelli intended to argue that jurors
favoring legalization of marijuana were underrepresented on the
jury, he did not sufficiently raise that issue or meet the
required standard.  "The American concept of the jury trial
contemplates a jury drawn from a fair cross section of the
community."  United States v. Royal, 174 F.3d 1, 5-6 (1st Cir.
1999) (internal quotation marks omitted).  The fair cross-
section requirement does not insure "any particular composition"
or a "true mirror of the community."  Id. at 6 (internal
quotation marks omitted).  "In order to make a prima facie case
of a violation of the fair cross-section requirement, a
defendant must show: (1) that the group alleged to be excluded
is a 'distinctive' group in the community; (2) that the
representation of this group in venires from which juries are
selected is not fair and reasonable in relation to the number of
such persons in the community; and (3) that this underrepre-
sentation is due to systematic exclusion of the group in the

40

jury selection process."  Id. (internal quotation marks omitted).

Apicelli makes no effort to show that people who favor legalization of marijuana are a distinctive group in New Hampshire.  Following that omission, he makes no showing of the other elements for violation of the fair cross-section requirement.  Therefore, to the extent Apicelli intended to argue that aspect of jury fairness, he does not raise a substantial issue of law or fact.

10.  Equal Protection

The equal protection issue is first presented here in support of the motion for continuing release.[15]  Apicelli states only:  "Equal protection violation (Federal Marijuana enforcement, or non-enforcement, policy)".  Because the issue was not raised previously, it would be reviewed for plain error or Apicelli would have to show that the equal protection issue is "so compelling as virtually to insure [his] success."  Bayko, 774 F.2d at 518.

---

[15] Apicelli previously suggested that his case was referred from the state to the federal authorities based on an improper motive.  At the hearing, defense counsel again asserted without evidence or a plausible theory that the case was transferred from the state based on an improper motive and bad faith.  As the court pointed out at the hearing, cases are often transferred from the state to the federal system.

To the extent Apicelli is arguing that the decision to
prosecute him constituted improper selective prosecution, he has
not made the necessary showing.  United States v. Bassford, 812
F.2d 16, 19-22 (1st Cir. 1987).  Further, courts that have
considered a claim of violation of equal protection in the
context of prosecution for marijuana crimes have concluded that
no equal protection violation occurred.  See, e.g., United
States v. Pickard, 100 F. Supp. 3d 981, 1009-11 (E.D. Cal.
2015); United States v. Tote, 2015 WL 3732010, at *4-*5 (E.D.
Cal. June 12, 2015); United States v. Inzer, 2015 WL 3404672, at
*3-*4 (M.D. Fl. May 26, 2015); United States v. Vawter, 2014 WL
5438382, at *7-*8 (W.D. Mo. Oct. 24, 2014).

Therefore, Apicelli has not shown plain error or otherwise
satisfied the substantial question standard.

    11.  Requests for Mistrial

Apicelli contends that his motions for a mistrial were
erroneously denied.  Apicelli's mistrial motions made during the
testimony of Sergeant Payer and Sergeant Blodgett were addressed
in the context of the issues raised about evidence of the
mushroom grow and the introduction of hearsay.  Neither was
substantial.  Apicelli also represents that he moved for a
mistrial based on improper statements made by the government
during opening and closing but does not identify what statements

were improper nor give any grounds why the court should have declared a mistrial.  At the hearing, defense counsel mentioned his continuing objection to the government's opening statement but provided no additional explanation of what was at issue.

Defense counsel objected twice at the beginning of the government's opening statement and requested bench conferences. The first objection pertained to a reference to the tip the police received from Bain about marijuana growing on the property at 201 Mason Road, which defense counsel argued was hearsay.  The prosecutor explained that the tip was mentioned to show the course of the investigation, not to provide evidence of a marijuana grow.  The objection was overruled.

A few minutes later, defense counsel objected to the prosecutor's discussion of what is shown in the videotapes. Defense counsel argued that the government would not be able to lay a foundation for the videotapes because Bain was not going to testify and that the prosecutor was misstating what could be seen in the videotapes.  Defense counsel moved for a mistrial on the ground that what is shown in the videotapes was not relevant because the government would not be able to lay a foundation for that evidence.  The motion was denied.

As is explained above, the government did lay a proper foundation for the videotape evidence that was admitted and viewed by the jury.  His other motions for a mistrial were

43

properly denied.  Therefore, Apicelli has not shown a substantial issue of law or fact based on his motions for a mistrial.

### 12.  Prosecutorial Conduct

As a last catch-all issue, Apicelli states without elaboration:  "Cumulative Error in prosecutorial conduct constituting additional grounds for dismissal/mistrial."  He does not identify any erroneous prosecutorial conduct or prosecutorial misconduct and none is apparent to the court. Therefore, the cumulative error issue does not raise a substantial question of law or fact.

### 13.  Additional Issues

During the hearing, defense counsel raised or alluded to additional issues that were not presented in the motion to continue release.  Counsel briefly challenged the two-point enhancement under U.S.S.G. § 2D1.1(b)(12), the "stash house enhancement," the lack of a missing witness jury instruction, and the lack of an "identification" instruction.  To the extent any other issues were mentioned, they were not sufficiently developed to allow review.

a.  U.S.S.G. § 2D1.1(b)

Under the Guidelines, a defendant's base offense level is increased by two levels "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance."  U.S.S.G. § 2D1.1(b)(12).  That enhancement was applied to Apicelli because he maintained his residence for the purpose of manufacturing marijuana.

At the hearing, defense counsel argued that § 2D1.1(b)(12) was wrongly applied to Apicelli because he did not maintain a "crack house" and because he was not convicted of distributing or selling marijuana.  Contrary to defense counsel's argument, § 2D1.1(b)12) applies to manufacturing a controlled substance, such as marijuana, and is not limited to offenses involving crack.

Defense counsel also argued briefly that the government could not seek the enhancement because it conflicted with the government's position that Apicelli lived in the house at 201 Mason Road.  That argument is contrary to the law.

The so-called "stash house enhancement" "applies when a defendant knowingly maintains a premises for the purpose of manufacturing or distributing a controlled substance."  United States v. Jones, 778 F.3d 375, 384 (1st Cir. 2015).  To determine whether the defendant "maintains" the premises, the court is directed to consider whether the defendant owned or

45

rented the premises and "the extent to which the defendant
controlled access to, or activities at, the premises."  Id.
(internal quotation marks omitted).  The enhancement applies
when drug manufacturing is the primary or principal use of the
premises but that need not be the only use.  Id. at 385.  The
purpose of the defendant's use of the premises is determined
from the totality of the circumstances, including "the quantity
of drugs discovered and the presence of drug paraphernalia or
tools of the drug-trafficking trade."  Id.

Apicelli rented the property at 201 Mason Road, and he
lived in the house.  The amount of marijuana and the items
related to growing and processing marijuana found inside
Apicelli's house easily demonstrated that the primary purpose of
the house was marijuana manufacture.  Therefore, the two-level
enhancement was properly applied.  Further, in response to
defense counsel's argument at the hearing, the government
pointed out that the enhancement did not affect the sentence in
any case.

b.  Missing Witness Instruction

During the charging conference, defense counsel asked the
court to give a missing witness instruction based on the
government's decision not to call Robert Bain as a witness at
trial.  Counsel's rambling argument, however, primarily

46

addressed his challenges to the search warrant.  In response to
questions from the court, counsel admitted that Bain was
available and that the defense could have called Bain as a
defense witness.  The court denied the request for a missing
witness instruction. [16]

To be entitled to a missing witness instruction, "a
criminal defendant must show either that the uncalled witness is
'favorably disposed' to testify on behalf of the government—
meaning the government ordinarily would be expected to produce
that witness—or that the witness is 'peculiarly available' to
the government."  United States v. Ramos-Gonzalez, 775 F.3d 483,
500 (1st Cir. 2015).  A witness is not peculiarly available to
the government if the defendant has the same ability to subpoena
the witness.  United States v. Anderson, 452 F.3d 66, 82 (1st
Cir. 2006).  The court of appeals reviews the trial court's

---

[16] Defense counsel then withdrew his request for a "classic"
missing witness instruction and instead asked to be allowed to
comment during closing on the government's failure to call Bain
as a witness.  The government responded that if counsel were to
make that comment or argument, it would be entitled to respond
by saying that Bain was equally available to the defense, citing
United States v. Henderson, 320 F.3d 92, 107 (1st Cir. 2003).
Defense counsel agreed to that procedure.  Defense counsel
indicated that he intended to comment on Bain's absence and
agreed that the government would then be entitled to rebuttal.
Defense counsel did comment on Bain during closing argument, and
the government addressed the issue in rebuttal as defense
counsel agreed could happen.

decision not to give a missing witness instruction for an abuse
of discretion.  Ramos-Gonzalez, 775 F.3d at 500.

Defense counsel conceded that he could have called Bain as
a witness.  Therefore, the necessary predicate for a missing
witness instruction did not exist.

c.  Identity Instruction

Defense counsel stated at the hearing that the court erred
in failing to give an identity instruction, without explaining
what was requested and not given.  Before the jury was charged,
the defense requested an additional instruction on proof of
identity as part of the instruction on the elements of the
crime.  The government objected to that request.

The court added the following instruction:

IDENTITY
The government has the burden of proving beyond a
reasonable doubt that the defendant manufactured marijuana
as charged in the indictment.

Defense counsel did not object to that instruction or ask that
any additional instruction be given with respect to identity.
Therefore, Apicelli has not shown a substantial question with
respect to an additional identity instruction.

Conclusion

For the foregoing reasons, none of the issues the defendant
raised in support of his motion for continued release (document

48

no. 108) presented a substantial question of law or fact that is likely to result in reversal of his conviction, an order for a new trial, a sentence without imprisonment, or a reduced sentence that would impose less imprisonment than time served plus the expected duration of the appeal process.  Therefore, the court denied the motion.

The order to surrender is stayed pending the defendant's appeal of this order.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

January 4, 2016

cc:  Sven D. Wiberg, Esq.
     Charles L. Rombeau, Esq.
     Donald A. Feith, Esq.
     United States Marshal
     United States Probation